22 219
47 1052
47 1060·

## No. 1814.—SUCCESSION OF JESSE W. WILDER.

Where two parties, the one residing in Louisiana and the other in Mississippi, enter into an antenuptial contract of marriage in the State of Mississippi, and immediately after marriage remove to and establish their domicile in Louisiana, the capacity of the parties, as well as the form of the contract, must be tested by the laws of Mississippi, where it was made, while its effect must be governed by the laws of Louisiana, where it is to be enforced.

A marriage contract made in Mississippi, by a minor on the one part, is not absolutely void, but is voidable only, unless the contract shows on its face that it is not to the advantage of the minor.

Where the marriage contract confers upon the minor privileges and rights over her separate property, that she could not exercise under the law of the place where it is made, without the contract, it can not be said·not to be to her advantage.

In determining the question whether the contract was for the advantage of the minor, and whether it is void or voidable, the *lex loci contractus* must alone be consulted.

A minor who has made a marriage contract, whereby the community of acquets and gains are stipulated not to exist during coverture, may bring suit to avoid such contract, on the ground of her minority at the time it was made, at any time within five years after her majority. If suit is not brought within five years after majority, the action is prescribed. C. C. 3507.

It seems that, in a suit for a partition by one heir against the widow and the other heirs, where the plaintiff relied on a marriage contract executed in another State as a bar to the widow's right to one-half of the community, and the widow contests the validity of the marriage contract, the plaintiff may successfully plead the prescription of five years in bar of the widow's right.

APPEAL from Second District Court of New Orleans. *Thomas, J. Buchanan & Gilmore,* for George Wilder, appellant. *Race, Foster & E. T. Merrick,* for Mrs. Jordan, appellee. *Frank Haynes,* for under tutor, appellant.

WYLY, J. George Wilder instituted this suit against Mrs. Jordan, his stepmother, and her two children (his coheirs), for partition of the property of the succession of his father, Jesse W. Wilder.

The various issues presented by the pleadings, by agreement of counsel, are reserved until the action of the court is had upon the main one, to wit: "The question whether Mrs. Harriet A. Bartholomew, late widow of Jesse W. Wilder, deceased, and now wife of the said William Jordan, has been barred of her right to a community of acquets and gains between herself and her predeceased husband, by an antenuptial contract."     *     *     *     *     *     *     *

In November, 1854, Jesse W. Wilder, of New Orleans, married Harriet A. Bartholomew, of the county of Hancock and State of Mississippi, at the·residence of her father, in said county· and· State, and

in a few days thereafter removed to New Orleans, where they continued to reside till the death of Wilder, in January, 1862. On the day and at the place of the marriage, and just before its celebration, the ante-nuptial agreement, or marriage contract in question, was executed. The plaintiff, George Wilder, the issue of a former marriage, was then a minor. A witness, who was present at the marriage, describes Jesse W. Wilder as old and infirm, and his bride as a charming girl of about seventeen.

The marriage contract declares: "That whereas, a marriage is intended presently to be solemnized between said Jesse and Harriet, and they are desirous, prior to that event, to settle their respective estates according to purposes, uses and limitations intended and desired, so that the right, title and interest may be defined, and not to be affected by the contemplated union; and whereas, the said Wilder is engaged in business in the city of New Orleans, with a capital of $5,000, or more or less, which (as well as any other property in which said capital, and the profits accruing therefrom, may be now or here-after invested) he desires to keep free from and unaffected by any claim, right, restraint or contingency arising out of his marriage with said Harriet; and whereas, said Harriet A. Bartholomew is the owner of a slave woman named Lucinda, conveyed to her by notarial act of record in the office of E. L. Lewis, notary public, in the city of New Orleans, which said slave and her issue, together with any other estate, real or personal, to which she is now entitled or which she may hereafter acquire or receive by gift, devise or inheritance, she desires to render subservient to her own comfort and control during the contemplated coverture, with the power of alienation, devise or bequest beyond the interference or restraint of her intended husband. Now, therefore, said Harriet relinquishes and abandons all right, title, claim or interest whatever which she might otherwise have acquired in the real and personal property of said Jesse W. Wilder, and he renounces all right, title or claim of, in or to the property, real or personal, of said Harriet, leaving her free to sell, incumber, devise or bequeath the same, or any part of it, according to her own pleasure, as though she was *femme sole.* And said Lewis Bartholomew is charged to make under her order any and all proper conveyances, assurances, etc. Said Jesse W. Wilder and Harriet A. Bartholomew, respectively, do hereby reserve and retain the entire and absolute control in and over their respective estates and property as now owned by each, *and which may be acquired during their coverture,* with the right and power to each from and after the contemplated marriage, and at any and all times during the cov-erture, by deed, will or otherwise, to dispose of the same, or any portion thereof, according to their own will and pleasure, respectively, without the interference, consent or claim of the other."   *   *   *

The district judge came to the conclusion that the terms of the

marriage settlement did not preclude the existence of community between the spouses, and rendered judgment for the defendant, Mrs. Jordan, and the plaintiff has appealed. We can not agree with the learned judge on the ground on which he based his decision. We think a fair interpretation of the antenuptial agreement leaves no room to doubt the exclusion of community. If full effect be given to the stipulations of the marriage contract, no community can exist. It would be impossible; because, under that instrument, each spouse retains "absolute control in and over their respective estates and property as now owned by each, and *which may be acquired during their coverture*," with the right of disposition reserved to each, to be exercised at any and all times during coverture without the consent or interference of the other.

We have found more difficulty, however, in the other grounds taken by the learned counsel of the defendant, Mrs. Jordan; but after a full examination of the authorities bearing on the case and the evidence contained in the record, have come to a conclusion adverse to him. The contract was made in Mississippi, where the bride, Miss Bartholomew, then within the age of minority, resided; it was, doubtless, intended to have effect at the domicile and place of business of the husband, in this State. The capacity of the parties, as well as the form of the contract, must be tested by the laws of Mississippi, while its effect must be governed by the laws of this State.

The question is as to the capacity of Harriet A. Bartholomew to make the contract. Was it voidable on account of her minority, or was it absolutely void?

Tested by the rule stated by the counsel himself, to wit: Where the contract is not to the advantage of the minor, it is absolutely void; we do not think the marriage contract in question is void. Suppose the parties had settled in Mississippi, making that their business and matrimonial domicile, and that Jesse W. Wilder had died there, and his succession had been opened, and the issues now raised were presented to a Mississippi tribunal for adjudication, could it be said that a court of that State would decree the marriage contract under consideration void, where the succession was under its jurisdiction, and where it could apply the common law prevailing there, as well to the effect as to the form of the contract and the capacity of the parties?

With the matrimonial domicile in that State, where the common law is administered, can it be said that the wife did not derive any greater rights over her property, the slave, during marriage, with the antenuptial contract, than she would have had without it? Surely not. By the common law, the wife has not the right to administer her paraphernal property as she can under the civil law. We deem it proper to remark that the statutes of Mississippi were not introduced in evidence, and we assume, as a matter of history, that the common law prevails there.

The error, we think, the learned counsel of the defendant has made .is, that when examining the validity of the act as affected by minority, . according to the laws of Mississippi, he looks to the effect of the contract, not as tested by the same laws, but as tested by the laws of this State, which allow the community of acquets and gains, and which permit the wife to resume. at pleasure the administration of her para- . phernal property.

When the effect of the contract is looked to merely to ascertain whether it is valid and binding on the minor who made it, the laws of the State regulating the validity of the contract must alone be con- .sulted. To ascertain whether the contract was for the advantage of the minor, in order to see whether it is void or voidable, the *lex loci contractus* alone must be considered.

The laws of this State, which was the domicile, and the laws of the place of contract, Mississippi, can not both be applied to ascertain the validity of the instrument. We can not say that the contract is not . valid in Mississippi, because it gives nothing more to the minor wife than she would have without it under the laws of Louisiana.

The opinions of the witnesses, Goode and Dillingham, experienced lawyers of Mississippi, were received as evidence in the case ; they are positively of the opinion that the marriage contract under discussion was not void, but only voidable, by the laws of Mississippi, where it was made. Their opinions are entitled to great weight in determining the case, because they were received by the parties as evidence. We think, however, the authorities bearing on the case do not sustain the rule, that where a contract is not for the advantage of the minor it is absolutely void, and not voidable, as announced by the counsel of the defendant to be the test to ascertain the validity of the ante-nuptial contract under consideration.

It appears to us that the weight of authorities and the decisions of ˏthe courts of the States of the Union where the common law is admin- ·istered, establish a different rule from that stated by the learned counsel of the defendant, to which we have adverted. We take it to be the general rule that the acts and contracts of minors, under the common law as administered in the United States, are voidable only, and not void ; and the exception is, where the contract on its face appears necessarily prejudicial to the minor.

We discover nothing on the face of the marriage contract necessarily prejudicial to the minor, and we regard it as merely voidable.

The question before us was elaborately examined by the Supreme Court of the United States, in Tucker et al. *v.* Moreland, 10 Peters 65 ; after a thorough review of the. English authorities, Mr. Justice Story, the organ of the court, arrived at this conclusion. He says : " It is apparent, then, upon English authorities, that however true it may be that an infant may so far bind himself by deed in certain

cases, as that in consequence of the solemnity of the instrument it is, voidable only, and not void ; yet that the instrument, however solemn, is held to be void, if upon its face, it is apparent that it is to the prejudice of the infant." The same eminent jurist, after carefully reviewing the American decisions on this question, declares that: " The result of the American decisions has been correctly stated by Mr. Chancellor Kent (2 Com. Sec. 31) to be, that they are in favor of construing the acts and contracts of infants generally to be voidable only, and not void, and subject to their election, when they come of age, either to affirm or disallow them ; and that the doctrine of Zouch v. Parsons, has been recognized and adopted as law. It may be added that they seem generally to hold that the deed of an infant conveying lands is voidable only, and not void, unless, perhaps, the deed should manifestly appear on the face of it to be to the prejudice of the infant ;. and this upon the nature and solemnity, as well as the operation of the instrument." 10 Pet. 71.

Considering the solemnity of the act before us and the main object of the parties to contract a marriage, to define their rights of property, and to stipulate for the regulation of the same during the contemplated coverture, we can see nothing prejudicial to the interest of the minor ; and, tested by the laws applicable, we believe the contract in question was only voidable, and that it was binding on the minor, unless disaffirmed by her afterwads, when having the capacity to do so. We find in the record no evidence of the disaffirmance thereof by Mrs. Jordan, although many years have elapsed since she has arrived of age, and has had the capacity to do so. It is now too late for her to demand the rescission of the contract, as the prescription pleaded by the plaintiff is applicable thereto. C. C. 3507. The other questions are not of a serious character.

It is therefore ordered that the judgment of the court a qua be avoided and annulled, and that there be judgment forbidding Mrs. Jordan to participate as partner in community in the succession of Jesse W. Wilder, and that this case be remanded to the court a qua for decision of the other issues herein, and to be proceeded in according to law, and that the defendant, Mrs. Jordan, pay costs of this appeal.

*Argument of Race, Foster & E. T. Merrick, for rehearing.*—The court will see, by examining the plaintiffs' petition, page two, that the plaintiffs set up and claim the whole of the property acquired during the second community as belonging to the estate of Jesse W. Wilder.

The petition prays that Harriet A. Bartholomew, wife of William Jordan, and said William Jordan (these appellees) be cited individually ; and a partition is prayed for, in the proportion of one-third to petitioners, and one-third to each of the minors, thus evicting the defendant, Mrs. Jordan, from all ownership in the property. See page 4. The answer of the defendant denies the validity of the marriage

contract pleaded. This answer is annexed to page 1, and comes up in original.

The agreement itself (record, page 39) shows that the parties still occupied the same position. It commences, after giving the title of the suit and court: "Petition of George W. Wilder for partition;" and throughout, showing that he was plaintiff, and the appellees defendants. It was agreed that the plaintiff in partition shall be permitted, without amending the petition, to offer a copy of the contract in evidence, and that Mrs. Jordan and her husband shall be at liberty to set-up and urge any and all objections they may have to the validity and effect of said instrument, without amending her answer or specially pleading such defense. It is, we think, therefore, certain that the appellees are really defendants, and have the same right that any other suitor as defendant would have.

Now, the plaintiff pleads, for the first time in this court, the plea of prescription of five years against us as defendants, notwithstanding our right to oppose, as a shield, the validity and effect of said act.

The defendant has filed no reconventional demand. She stands on her defense which she was allowed by the agreement to set up, without amending her "answer," "or specially pleading such defense."

Now, let us look, for a moment, to the position of the minor in relation to the marriage contract. We find that it was made in Mississippi, with the intention that the parties should immediately betake themselves to the husband's domicile, and submit themselves to the laws of Louisiana. The law, therefore, of Louisiana, where Wilder continued to reside up to the time of his death, and the widow has continued to reside, is the law regulating the prescription. The Code of Practice is explicit, and is in conformity with the laws of, we believe, all countries, where the common and civil laws prevail. It says: "The forms, the effects and prescriptions of actions are governed by the law of the place where they are brought." C. P. 13.

"Husband and wife can not prescribe against each other." C. C. 3489.

Prescription is equally suspended, during marriage, among others "in every case where the action of the wife may be prejudicial to her husband." C. C. 3491, last clause. See also 2 An. 757, McIntosh v. Smith.

The foregoing provisions of the Civil Code are cited for the purpose only of showing how careful the laws of Louisiana have been not to jeopardize the right of the wife where a suit might be needed to render the husband's estate liable to the wife.

We now turn to the case we have in hand, embodied in the maxim of law, "Quae sunt temporalia ad agendum sunt perpetua ad excipiendum." The principle is embodied in article 20 of the Code of Practice, the English text of which was a bad translation. The French text is, "He who has a right to institute an action to recover what belongs to him, can, by a much stronger reason, oppose an exception, to preserve his right." There is no article of the Code which limits this right. There is no prescription to it. This principle of law was recognized in Nichols v. Hanse & Hepp, 2 L. R. 385, where it was held that a claim barred by prescription might be set up as a defense to an action. The same principle is recognized in 12 Rob. 437, The Orleans Theatre v. Lafferanderie. The court say: "We believe, however, that when a remedy may be sought by action, the party entitled thereto may avail himself of it by exception." Minority and coverture may always be pleaded under our law. The wife must reside with her husband. Being under his power, she was not bound to go to Mississippi to sue her husband. If she had gone there, she had no capacity to sue, and there could have been no defendant to her suit,

and it was certainly sufficient for her to abide in her husband's domicile, and await events.

Redhibitory defects may be set up, by way of defense, though the redhibitory action be prescribed. Thompson *v.* Milburn, 1 N. S. 468. So of the action *quanti minoris.* 3 N. S. 695, 698.

A party may use as a shield, what he can no longer use as a weapon. Bushnell *v.* Brown's Heirs, 4 N. S. 500; Lafiton *v.* Doiron, 12 An. 165.

In Marshall *v.* The Grand Gulf Railroad Company, 12 Rob. 202, the court says: "Now, although the direct action might be prescribed and barred by one year, yet, at whatever period the party seeks to enforce such contract, the exception will avail him against whom it is sought to be enforced." See 6 An. 687.

Even where there is a reconventional demand, the defendant may, so far as she stands on her defense against the plaintiffs' demand, oppose such facts as would have sustained her action, after prescription is acquired. 3 N. S. 698. So also this court held in Riddle *v.* Kreinbiehl. The court said: "The article expressly provides, that the redhibitory action must be instituted, at farthest, within one year, commencing from the day of sale. So far, however, as the defendant seeks to resist the payment of the unpaid balance due upon the price, she may invoke the doctrine *quae temporalia;* so, though the redhibitory action is barred by the lapse of time, yet she may invoke, as a matter of defense, any facts which would sustain a redhibitory action." 12 An. 297.

In 13 An. 250, the court says: " When Richardson commenced the action of redhibition, he had two modes of proceeding; either to wait until the maturity of the notes, and set up the redhibitory vices of the thing sold as a defense to the notes, or assume, as he did do, the position of plaintiff. Had he chosen to stand on the defensive, his action would have been prescribed, and he would have lost the payment which he had made in cash. He could have used only his exception as a shield."

There is no law in Louisiana, as far as counsel remember, declaring a prescription of the subject matter of answers, exceptions and defenses to actions. Actions alone are prescribed. Arts. C. C. 3499, 3501. The prescription which the court has inadvertently, as we think, applied to this case, is to the action of nullity or rescission of contracts, etc. 3507. The grounds of defense are not declared to be prescribed, and we have neither brought an action nor a demand in reconvention. We stand on our defense. We use our shield. The law presumes all the property community, and we have held, and are holding, the position of the widow in community. C. C. 2374. The plaintiff sues, and says the widow has no interest in the estate, because she executed an instrument, which he sets up, debarring herself of such interest. She replies that the instrument is void, and does not bind her, for the reasons which she assigns. Now, at common law, she could avoid such contract when set up against her, by the same plea which she opposes here. The Supreme Court of the United States says: "There is no doubt that an infant may avoid his act, deed or contract by different means, according to the nature of this act, and the circumstances of the case, He may sometimes avoid it by matter *in pais,* as in case of feoffment, by entry, if his entry is not tolled. Sometimes by plea, as when he is sued upon his bond or other contract. Sometimes by suit," etc. 10 Pet. 71.

The defendant has avoided the supposed contract by entry (if the court will), for she has entered upon and insisted upon her right as widow in community, as this very suit proves, wherein the marriage contract is set up and insisted by the plaintiff against her as defendant. She has, moreover, which is, in the opinion of counsel, still more decisive, pleaded the nullities of the contract, as she unquestionably

29

had the right to do, under the law of Louisiana, her domicile, to which she was bound to submit, and from which she had no right to escape, as well as by the law of Mississippi, had she gone there; which would have protected her in one-third of the personal property and her dower, and had the contract been set up against her, would have allowed her her defense to the contract.

Rehearing refused.